| | | |
|---|---|---|
| PATRICK COOMBS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:15-cv-00117-GZS |
| | ) | |
| SCOTT LANDRY,  et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiff Patrick Coombs, currently incarcerated at the Maine State Prison, alleges that Defendants – Maine Correctional Center Warden Scott Landry, Captain Shawn Welch, and Unit Manager Luke Monahan – violated his constitutional rights when they denied him due process in connection with certain disciplinary proceedings and related sanctions.

The matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 33.)  Through the motion, Defendants argue that Plaintiff's assertions regarding the need for certain witnesses at the disciplinary hearing are irrelevant to the outcome of the hearing, and that Plaintiff failed to exhaust the available administrative remedies with respect to his claim regarding the removal of personal property from his cell.

The matter is also before the Court on Plaintiff's Motion for Summary Judgment. (ECF No. 35.)  Through his motion, Plaintiff argues the record establishes that Defendants violated his due process rights.

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court grant in part and deny in part Defendants' motion, and deny Plaintiff's motion.

## FACTUAL RECORD

Plaintiff's operative pleading is his amended complaint. (ECF No. 26.) In the amended complaint, Plaintiff asserts that Defendant Welch violated Plaintiff's due process rights when Defendant Welch conducted a disciplinary hearing and did not call the witnesses Plaintiff requested; that Defendant Landry violated Plaintiff's due process rights by upholding Defendant Welch's guilty finding on appeal despite the alleged due process violation; and that Defendant Monahan violated Plaintiff's rights by terminating Plaintiff's employment within the prison based on the underlying disciplinary charge.

At summary judgment, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b) – (d) require the specific citation to record evidence. In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party seeking summary judgment thus must file a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b), (f).

A party seeking to oppose a properly filed and supported motion for summary judgment must file an opposing statement of material facts that admits, denies, or qualifies

the factual statements made by the moving party. D. Me. Loc. R. 56(c). Unless a statement is admitted, the opposing party must provide a citation to evidence of record that supports the opposing statement. *Id.* If a party fails to do so, the moving party's factual statements "shall be deemed admitted." D. Me. Loc. R. 56(f). Moreover, pursuant to Local Rule 7(b), parties are expected to file an objection to a motion if they contest the motion, and unless they do so are "deemed to have waived objection."

A court, however, "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7-8 (1st Cir. 2002). Instead, courts must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In support of their motion for summary judgment, Defendants filed a statement of material facts that complies with the Local Rule, in that each statement is supported by a citation to evidence of record. (ECF No. 34.) Plaintiff also filed a statement of fact. (ECF No. 36.) Plaintiff's statement tracks Defendants' statement and, in several instances, states that Plaintiff "concurs" with Defendants' factual assertions. In other instances, Plaintiff offers qualifications, but does not state whether he denies or qualifies Defendants' statements. Plaintiff's statement is not supported by an affidavit, and his pleadings are not sworn.

At the time of the incidents alleged in the amended complaint, Plaintiff was incarcerated at the Maine Correctional Center (MCC). (Defendants' Statement of Material Facts ¶ 1, ECF No. 34.) Defendant Welch, a correctional captain at MCC, served as the facility's disciplinary hearing officer. (*Id.* ¶ 2.)

On June 14, 2014, Defendant Welch held a disciplinary hearing for Plaintiff, who had been charged with a disciplinary infraction (Alcohol, Class A). (*Id.* ¶ 3.)[1] The disciplinary charge arose out of a May 18, 2014, incident in which a corrections officer found home brewing equipment, fruit and sugar in a cell occupied by Plaintiff and three other prisoners. Two of the other prisoners, J.B. and J.L., were also charged with the same infraction. (*Id.* ¶ 4.)[2]

According to the investigating officer's report of the incident (ECF No. 34-2, PageID # 123), which report was part of the record before Defendant Welch at the disciplinary hearing, J.B. and J.L. tested positive for alcohol. (*Id.* ¶ 5.) Although Plaintiff did not test positive for alcohol, the officer noted that Plaintiff did not appear to be blowing sufficiently into the testing device, and that Plaintiff smelled of alcohol. (*Id.*) The officer's

---

[1] Plaintiff asserts the disciplinary charge should have been dismissed because the hearing was not held timely under the applicable disciplinary policy. (Plaintiff's Statement of Material Facts ¶ 3, ECF No. 36.) The proposed fact is immaterial to Plaintiff's due process claim because the Due Process Clause does not impose a time limit for prison disciplinary hearings.

[2] Neither party has offered a statement as to why the fourth cell mate was not found guilty of the violation. However, the incident report states that the fourth individual had a negative test and did not smell of alcohol. (ECF No. 34-2, PageID # 123.)

incident report also reflects that the equipment and supplies were discovered hidden under Plaintiff's bunk.  (*Id.* ¶ 6.)[3]

The Department's Prisoner Discipline Policy in effect at the time defined the offense of "Alcohol" as "[t]rafficking, possession or use of any alcoholic beverage or the adulteration of any food or drink for the purpose of making an intoxicating beverage."  (*Id.* ¶ 7; Discipline Policy, ECF No. 34-3, PageID # 156.)  Relevant to a possession charge, the policy stated:

> In the case of a charge for which possession is an element, and more than one prisoner exercises control over an area in which an item is found, a finding of possession by one or more prisoners may be based on a determination that there is some evidence that the prisoner or prisoners exercised control over the item.

(DSMF ¶ 7; Discipline Policy, ECF No. 34-3, PageID # 150, ¶ 12.)  The policy also included the following definition of possession:  "For purposes of any violation which includes possession as an element, possession means to have physical possession or otherwise exercise control over an item on the prisoner's person or in his/her assigned area, e.g., room, cell, work area, locker."  (DSMF ¶ 7; Discipline Policy, ECF No. 34-3, PageID # 163.)[4]

The policy also defined offenses to include accessory and attempted conduct:

---

[3] Plaintiff notes that the officer who conducted the tests and authored the report, Officer Thayer, was not the officer who conducted the cell search, Officer Struck.  (PSMF ¶ 6.)  According to Plaintiff, Officer Struck's report was never produced and was not part of the hearing record.  (*Id.* ¶ 10.)  The "Discipline Hearing Record" filed by Defendants (ECF No. 34 -2) does not include a report by Officer Struck or any suggestion that Officer Struck offered a statement at the hearing.

[4] Plaintiff asserts that the possession language is immaterial because he was not found guilty of possession. (PSMF ¶ 7.)

THE AFOREMENTIONED VIOLATIONS INCLUDE THE PLANNING OF, ATTEMPT OF, AND/OR PARTICIPATION AS AN ACCESSORY IN THE VIOLATION.  An attempt is an act which constitutes a substantial step in a course of conduct that will end in the commission of a prohibited act.  A prisoner is an accessory if he/she knowingly provides assistance to another prisoner committing a violation.

(*Id.*)

Defendant Welch conducted disciplinary hearings for all three prisoners.  He conducted J.L.'s hearing on June 9, 2014, at which hearing J.L. pleaded "no contest" and stated his drinking was a "relapse."  (DSMF ¶ 8.)  Defendant Welch conducted the hearing for J.B. and Plaintiff on June 18, 2014.  J.B. pleaded not guilty to the charge and denied drinking.  Defendant Welch found J.B. guilty of the infraction based on the incident report and other factors, including a positive breathalyzer test, the report of staff that J.B. smelled of alcohol, and the presence of materials and equipment to make alcohol in a cell occupied by J.B.  (*Id.* ¶ 9.)

At his hearing, Plaintiff pleaded not guilty to the infraction.  He argued that he had passed the breathalyzer test, that he had nothing to do with the activity in the cell, and that he was not able to drink alcohol.  (*Id.* ¶ 10.)  Defendant Welch found Plaintiff guilty of the offense based principally on the incident report, which reflected that security staff smelled alcohol on Plaintiff, and that the equipment was discovered beneath his bunk.  Defendant Welch concluded that the evidence demonstrated that Plaintiff "planned, attempted[,]

participated or was an accessory in the violation." (*Id.* ¶ 11.) Defendant Welch found Plaintiff not guilty of possession. (*Id.*)[5]

According to Defendant Welch, he denied Plaintiff's request to call J.B., J.L. and the fourth roommate as witnesses because he felt their testimony would not be relevant. More specifically, Defendant Welch determined that because there was no testimony or evidence to contradict the fact that the equipment was found under Plaintiff's bunk, even if the witnesses claimed ownership of the equipment, he was persuaded that at a minimum, Plaintiff was an accessory to the infraction. (*Id.* ¶ 12.)

As sanctions for the violation, Defendant Welch recommended 15 days of disciplinary restriction (suspended), 15 days loss of good time (suspended), 10 days loss of privileges and a $75 monetary sanction.[6] (DSMF ¶ 13.) Plaintiff appealed from Defendant Welch's decision to the warden, who affirmed the decision. (*Id.*)

Plaintiff subsequently filed a petition for judicial review of the warden's decision in the Cumberland County Superior Court pursuant to the Maine Administrative Procedures Act, 5 M.R.S. §§ 11001 et seq. On January 22, 2015, the court dismissed the petition for lack of jurisdiction because the petition was filed beyond the period specified in the applicable statute for the filing of a request for judicial review. (*Id.* ¶ 14.)

---

[5] Plaintiff asserts in opposition that the test kit he used was negative and that there does not appear to be a report by Officer Struck regarding his cell search because such a report has been requested in discovery and Defendants have not produced it. (PSMF ¶¶ 11 – 12.)

[6] The disciplinary sanctions of lost good time and disciplinary cell restriction imposed as a result of this disciplinary procedure, but suspended by Defendant Welch, were never enforced. (DSMF ¶ 16.)

On September 22, 2015, Plaintiff filed a grievance regarding certain personal property that had been confiscated from his cell.[7] (*Id.* ¶ 19.) The grievance review officer investigated Plaintiff's claim and determined that property was properly confiscated because Plaintiff was found guilty of a Class A disciplinary infraction and, under the applicable policy, the guilty finding required him to dispose of the property. (*Id.* ¶ 20-21.) The grievance review officer, therefore, denied his grievance, and communicated the decision to Plaintiff on November 2, 2015. (*Id.* ¶¶ 20-21)

Defendants maintain Plaintiff had the right under the grievance policy to appeal to the warden from the decision of the grievance review officer, but he did not do so. (*Id.* ¶ 22.) Plaintiff contends he did not have a right to grieve the removal of his property because the property was removed as a consequence of a disciplinary procedure and/or decision. (PSMF ¶¶ 20, 22; Grievance Policy § VI.A.4, ECF No. 34-9, PageID # 180 – 81.)

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact

---

[7] The Department of Corrections has a grievance policy (Policy 29.1) that covers prisoner grievances based on events that occur during a prisoner's confinement. The grievance policy governs claims regarding a prisoner's property. If the prisoner is not satisfied with the response of the grievance review officer, the prisoner may appeal the decision to the chief administrative officer of the facility and, ultimately, to the Commissioner of the Department of Corrections. (*Id.* ¶ 18.)

reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## DISCUSSION

### A.      The Due Process Claim against Defendant Welch

The Fourteenth Amendment prohibits state deprivation of property or liberty without due process of law. "To establish a procedural due process claim under § 1983, a plaintiff must [demonstrate] that [he] was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. P.R. Ports Auth.,* 515 F.3d 20, 29 (1st Cir. 2008).[8] Ordinarily, a

---

[8] As the First Circuit previously determined in this matter, the protected interest of which Plaintiff was deprived is his property interest in $75 in his prisoner account. *Coombs v. Welch*, No. 15-1776 (1st Cir. May 9, 2016). (Judgment, ECF No. 21.) Defendants argue that the "atypical and significant hardship"

procedural due process violation is complete when a deprivation is imposed through an established state procedure that does not comply with constitutional procedural standards. *Godin v. Machiasport Sch. Dep't Bd. of Directors*, 831 F. Supp. 2d 380, 389 – 90 (D. Me. 2011); *see also Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.").

Due process requires that an inmate who is to be deprived of an interest protected by the Due Process Clause first receive (1) advance written notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder of the evidence relied upon and the reason for the disciplinary action. *See Superintendent v. Hill,* 472 U.S. 445, 454 (1985). There must also be "some evidence in the record" to support a disciplinary finding. *Id.*

The right to call witnesses and present documentary evidence is not absolute. *Wolff v. McDonnell*, 418 U.S. 539, 566 – 67 (1974). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 566. The

standard of *Sandin v. Conner*, 515 U.S. 472 (1995), should apply to bar due process claims involving low-value monetary sanctions. Defendants do not cite any specific authority that would support this approach. The holding of *Sandin* is based on the limited liberty interest of a prisoner who is subject to a lawful sentence of incarceration. *Id.* at 480, 483 – 84.

limitation on the right to call witnesses was deemed appropriate because "[m]any prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and ... must have the necessary discretion without being subject to unduly crippling constitutional impediments." *Id. at* 566 – 67.

Although the Supreme Court in *Wolff* did not "prescribe it," the Court stated that "it would be useful for the [hearing officer] to state [the] reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* at 566. If a hearing officer refuses to call a material witness and fails to provide reasons for the refusal in the administrative hearing record, it does not necessarily follow that a due process violation has occurred. *Ponte v. Real*, 471 U.S. 491, 492 (1985). While "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, ... they may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court." *Id.* at 497. "[S]o long as the reasons are logically related to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." *Id. See also McGuinness v. Dubois*, 75 F.3d 794, 800 (1st Cir. 1996) (per curiam).

"The [*Ponte*] Court expressly declined to place on the inmate the burden of proving that the denial of a request to call witnesses was arbitrary or capricious, because the reasons why prison officials refused to call witnesses requested by the inmate 'are almost by definition not available to the inmate.'" *Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390,

1399 (1st Cir. 1991) (quoting *Ponte*, 471 U.S. at 499). *Ponte* thus "clarifies that the burden of persuasion as to the existence and sufficiency of such institutional concerns [justifying the denial of an inmate's request to call witnesses] is borne by the prison officials, not by the prisoners." *Id.* at 1399 – 400 (quoting *Grandison v. Cuyler,* 774 F.2d 598, 604 (3d Cir. 1985)); *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 – 31 (2d Cir. 1991) ("The burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of the position."); *Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989) (same). Significantly, officials "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." *Piggie v. McBride,* 277 F.3d 922, 925 (7th Cir. 2002).

Under the "some evidence" standard, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455 – 56 (emphasis added). "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455. A written disciplinary report completed by a non-witness, investigating officer, based on interviews with staff witnesses can satisfy the "some evidence" standard, even though it might be considered inadmissible hearsay in a criminal trial. *Griffin v. Spratt*, 969 F.2d 16, 22 (3d Cir. 1992) ("[T]here can be no question that it is constitutional to rely on such testimony as the basis for a decision in a prison disciplinary proceeding, where hearsay is allowed."); *Rudd v. Sargent*, 866 F.2d 260, 262 (8th Cir. 1989) (affirming dismissal of prisoner's complaint for failure to state a claim).

> [T]he findings of a prison disciplinary board [need only] have the support of
> some evidence in the record. This is a lenient standard, requiring no more
> than a modicum of evidence. Even meager proof will suffice, so long as the
> record is not so devoid of evidence that the findings of the disciplinary board
> were without support or otherwise arbitrary. Although some evidence is not
> much, it still must point to the accused's guilt. It is not our province to assess
> the comparative weight of the evidence underlying the disciplinary board's
> decision.

*Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir.2000) (quotation marks, citations, parenthesis, and ellipsis omitted). *See also Figueroa v. Vose*, 57 F.3d 1061 (1st Cir. 1995) (unpublished, per curiam table opinion).

Preliminarily, to the extent Plaintiff asserts a due process violation because the hearing allegedly was not conducted within the time prescribed by prison policy, Plaintiff's claim fails. The failure of prison officials to follow their own internal policies does not establish a due process violation unless the failure also fails to satisfy the constitutionally required minimum procedure. The First Circuit has explained:

> "Federal constitutional standards rather than state statutes define the requirements
> of procedural due process." *Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir. 1994)
> (internal quotation marks and citation omitted). "The failure of the [disciplinary]
> board to comply with its own regulation would constitute a denial of due process if
> the regulation were mandated by the Constitution or federal law." *Domegan v.
> Fair,* 603 F. Supp. 360, 364 (D. Mass.1985); *see also Olim v. Wakinekona,* 461
> U.S. 238, 250 – 51 (1983) ("The State may choose to require procedures for reasons
> other than protection against deprivation of substantive rights, of course, but in
> making that choice the State does not create an independent substantive right.")
> (Footnote omitted).

*McGuinness v. Dubois*, 75 F.3d 794, 798 – 99 (1st Cir. 1996) (per curiam).

The due process issues are whether Defendant Welch's decision to deny Plaintiff's request to call the other occupants of the cell as witnesses is rational, and whether "some

evidence" of record supports the guilty finding. Defendant Welch explained the decision to deny Plaintiff's request for witnesses as follows:

> I declined to call these witnesses because I felt that their testimony would not be relevant. There was no testimony or evidence to contradict the officer's report that the homebrew equipment was hidden under Coombs's bunk. Even if J.B., J.L. or the fourth cellmate had testified favorably to Coombs and stated that the equipment belonged to them, there still would have been sufficient evidence - specifically the fact that the equipment was discovered under Coombs's bunk - to convince me that Coombs was, at the very least, an accessory to the infraction.

(Affidavit of Shawn Welch ¶ 10, ECF No. 34-1.)[9]

The issue is whether the testimony of the proposed witnesses would be relevant to Plaintiff's potential involvement, including as an accessory, in the Alcohol violation. "Alcohol" is defined under the disciplinary policy as "[t]rafficking, possession or use of any alcoholic beverage or the adulteration of any food or drink for the purpose of making an intoxicating beverage." (Discipline Policy, ECF No. 34-3, PageID # 156.) A witness's testimony is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. *See also* Me. R. Evid. 401 (same). Based on the explanation Defendant Welch provided in his affidavit, a fact finder could conclude Defendant Welch relied primarily, if not exclusively, on the location of the equipment to support the guilty finding. To the extent Plaintiff contends he had nothing to do with the activity, the testimony of the other occupants of the cell as to ownership of the equipment, who placed

---

[9] In the written decision, Defendant Welch stated the "[d]ecision [was] based upon the written report, interview with P/Coombs, and review of photographic evidence presented." (Decision at 8, ECF No. 34-2.)

the equipment under Plaintiff's bunk, and Plaintiff's knowledge of the presence of the equipment would be relevant. The fact that Defendant Welch might have viewed the evidence in the report to be compelling does not render the testimony irrelevant. Defendant Welch presumably would assess the persuasiveness of the testimony after hearing the testimony.[10]

Defendants maintain the decision to deny Plaintiff the opportunity to call the witnesses was within Defendant Welch's considerable discretion. Defendant Welch's discretion regarding a prisoner's ability to call witnesses is the discretion to "'refuse to call witnesses that may create a risk of reprisal or undermine authority.'" *Smith*, 936 F.2d at 1399 (quoting *Wolff*, 418 U.S. at 566.) Defendant Welch has offered no institutional concerns or correctional objectives to which the denial of the witnesses is related.

In short, contrary to Defendants' argument, the record does not establish as a matter of law that the denial of Plaintiff's request to present witness testimony satisfied due process requirements.[11]

---

[10] Although Defendants contend Defendant Welch heard two of the occupants of the room testify at their hearing (Motion at 7, ECF No. 33), I could find no evidence of record that the occupants testified about Plaintiff's involvement in the activity, or that Defendant Welch's decision in Plaintiff's case was based in any way on the occupants' testimony at their hearings.

[11] As Defendants observe, inferentially, the location of the alcohol and equipment would provide some evidence of Plaintiff's guilt. *See Hill,* 472 U.S. at 456 – 57 (disciplinary action supported when inmate was one of three seen fleeing from scene of assault even when victim denied fellow inmates had assaulted him); *Hamilton v. O'Leary,* 976 F.2d 341, 346 (7th Cir. 1992) (discovery of weapon in area controlled by four inmates created twenty-five percent chance of guilt, which evidence was deemed sufficient to support disciplinary action); *Mason v. Sargent,* 898 F.2d 679, 680 (8th Cir. 1990) (disciplinary action supported when contraband was found in locker shared by two inmates). The fact that some evidence existed in the record that would support the guilty finding does not, as a matter of law, negate the procedural violation. If a hearing officer could disregard a request to present witnesses who could potentially provide exculpatory evidence based solely on the existence of some evidence of guilt, a prisoner's right to present evidence could be rendered meaningless in most cases.

Plaintiff is also not entitled to summary judgment on his due process claim against Defendant Welch. Without evidence of the witnesses' testimony, the Court cannot determine as a matter of law that a due process violation occurred. A trial could reveal the testimony was not relevant and thus no due process violation occurred. In addition, courts have held that due process claims arising out of disciplinary proceedings are subject to a harmless error analysis. *Grossman v. Bruce,* 447 F.3d 801, 805 (10th Cir. 2006); *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003); *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir. 1991). Although the exclusion of the testimony could constitute a procedural defect for which relief would ordinarily be in order, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), "[a] violation of the right to call witnesses will be considered harmless unless there is evidence that the testimony could have aided the prisoner's defense." *Wilson v. McBride,* 93 F. App'x 994, 996 (7th Cir. 2004). A material factual issue thus remains in dispute as to whether the proposed witnesses were material, and whether the denial of the witnesses constitutes a constitutional deprivation.[12]

---

[12] As part of his claim, Plaintiff asserts that he was denied due process because Defendant Welch never produced a "complete" disciplinary report - in particular, a report authored by Officer Struck, who performed the cell search. (Plaintiff's Motion at 5.) In this circuit, a prisoner's request for discovery may in some cases "stand[] on the same footing as a request to call witnesses." *Smith*, 936 F.2d at 1401 (request for review of logbook to determine whether alleged victim was arguably inaccessible to claimant because victim was in protective custody). The record before the Court is not sufficient to determine whether any such report ever existed. If such a report was available, ordinarily Plaintiff should have been informed of its content, subject to certain limitations related to prison security or other concerns that would justify withholding it or limiting the extent of disclosure. The Disciplinary Policy used by Defendants called for disclosure of "the disciplinary report" and "other reports of the incident (unless confidential)." (Prisoner Discipline Policy 20.1, Part VI, Procedure B, ¶ 11, ECF No. 34-3, PageID # 146.)

**B.    The Due Process Claim against Defendant Landry**

Plaintiff's due process claim against Defendant Landry is based on Defendant Landry's decision to uphold on appeal the guilty finding. A supervisory officer is not liable under 42 U.S.C. § 1983 for every unconstitutional act of a subordinate. To be liable, there must be an affirmative link between the supervisor and the alleged conduct, meaning the supervisor's action or inaction must have "led inexorably to the constitutional violation." *Maldonado v. Fontanes,* 568 F.3d 263, 275 (1st Cir. 2009).   An affirmative link could be established by "supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Id.*

The Due Process Clause required that Plaintiff receive advance notice of the charge; the opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; a written statement from the fact finder of the evidence relied upon and the reason for the disciplinary action; and a decision supported by some evidence in the record. *See Superintendent v. Hill,* 472 U.S. 445, 454 (1985).

To the extent Plaintiff contends Defendant Landry's liability is based on his supervisory responsibilities, Plaintiff's claim fails.   The record would not support a finding that Defendant Landry participated in or advised Defendant Welch's decision to deny Plaintiff's request for witnesses, or that Defendant Landry established a custom or practice that a hearing officer should routinely deny requests to call witnesses.

Defendant Landry's potential liability, however, is not limited to his responsibilities as a supervisor of Defendant Welch.  Defendant Landry, in his review of Plaintiff's appeal

from Defendant Welch's guilty finding, has an affirmative obligation to assure that the prior proceedings satisfied constitutional requirements. *King v. Higgins*, 702 F.2d 18, 21 (1st Cir. 1983) ("Defendant confuses a lack of knowledge of the failure of other officials to ensure plaintiff's constitutional rights with a lack of duty on his part to assure that the proceedings below were constitutionally sound. As the official designated to hear prisoners' appeals, he had a duty to conduct at least a minimal investigation to determine whether there was any merit to plaintiff's appeal."). Here, the record lacks any evidence regarding the appellate review other than Defendant Welch's assertion that the warden affirmed the decision. (Affidavit of Defendant Welch ¶ 13, ECF No. 34.) Because a factual issue exists as to Plaintiff's due process claim and because the record lacks any substantive evidence regarding the appellate proceedings, Defendant Landry is not entitled to summary judgment.

Furthermore, Defendant Landry remains an appropriate defendant in his official capacity, because if Plaintiff prevails on his due process claim, Plaintiff could be entitled to equitable/injunctive relief in the form of an order to reimburse the funds taken from his prisoner account and Defendant Landry, as warden, is an appropriate official capacity defendant with respect to a claim for reimbursement of funds held by the Department. *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014);[13] *Howery v. Harrington*, No.

---

[13] In *Colwell*, the Ninth Circuit wrote:

> We have held that a corrections department secretary and prison warden were proper defendants in a § 1983 case because "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the

14-cv-01134, 2015 WL 4399480, at *3, 2015 U.S. Dist. Lexis 93205, at *8 (S.D. Ill. July 17, 2015).[14]

## C.    The Due Process Claim against Defendant Monahan

Plaintiff's claim against Defendant Monahan is based on Defendant Monahan's decision to remove Plaintiff from his prison job based on the disciplinary charge. Plaintiff's interest in maintaining prison employment is not an interest protected by the Due Process Clause.  *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996) (applying *Sandin* to uphold dismissal of prisoner's claim that his four-year participation in a work release program had given rise to a liberty interest in the program and citing, inter alia, *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 – 50 (5th Cir. 1995) (inmate terminated from a prison job permitting the automatic accrual of good-time credits lacked a protected liberty interest in the job, despite apparent violation of a state regulation)).  Accordingly, Defendant Monahan is entitled to summary judgment.

## D.    Confiscated Property

Plaintiff claims that in addition to the $75 he paid as a fine, he was deprived of items of personal property as a direct consequence of the guilty finding on the alcohol violation.

---

law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief."

763 F.3d at 1070 (quoting *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)).

[14] In *Howery*, the court observed that, "because Plaintiff is seeking injunctive relief, it is appropriate for the Warden of Menard to remain as a Defendant in the action, in his/her official capacity only."  2015 WL 4399480, at *3, 2015 U.S. Dist. Lexis 93205, at *8 (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out)).

Evidently, the Department of Corrections affords to some prisoners additional privileges to possess personal property items when the prisoners maintain clean disciplinary records, and withdraws those privileges based on disciplinary findings.

The loss of prisoner property due to a random, unauthorized act by a corrections officer does not offend due process. *Parrat v. Taylor*, 451 U.S. 527, 541 (1981). In fact, a constitutional deprivation is not established even if the loss or destruction of property is the product of intentional misconduct. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff, therefore, has not established a basis for relief on an independent claim for the loss of his property. In addition, even if Plaintiff had an independent claim for the loss of the property, Plaintiff could not proceed on the claim because he failed to exhaust the available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.").[15]

---

[15] The gravamen of Plaintiff's property claim is that certain property was confiscated as a consequence of the disciplinary proceeding he challenges. Defendants, in fact, appear to agree that the property was confiscated as the result of the guilty finding following the disciplinary proceedings. The record regarding Plaintiff's grievance about confiscated property includes a level 1 response by Grievance Review Officer stating:

> Regarding you grandfathered items; the prisoner discipline policy is clear, "A prisoner found guilty of a Class A or B disciplinary violation shall be required to dispose of all grandfathered personal property within thirty (30) days …. You were found guilty of a Class A – Alcohol infraction on 7/3/2014 (Maine Correctional Center-2014-0592). Hence, you did not rightfully possess any grandfathered items of 9/9/2015.

(ECF No. 34-10, PageID # 206.) While Plaintiff cannot proceed on an independent claim for the loss of property, this recommended decision is not intended to comment on whether, if Plaintiff prevails on his due process claim, Plaintiff could on his due process claim recover damages for the loss of his property.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant in part and deny in part Defendants' Motion for Summary Judgment. (ECF No. 33.)  In particular, I recommend the Court grant summary judgment to Defendant Monahan, and enter judgment in favor of Defendant Monahan.  I also recommend the Court dismiss Plaintiff's independent due process claim based on the loss of property.  I recommend the Court otherwise deny the motion for summary judgment.  Finally, I recommend the Court deny Plaintiff's Motion for Summary Judgment. (ECF No. 35.)

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of April, 2017.